```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                     DISTRICT OF VERMONT


United States of America    :
                            :
     v.                     :    File No. 2:04-CR-71-01
                            :
Sean Fabian                 :
```

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
### (Papers 20 and 27)

Defendant Sean Fabian has been indicted for various drug and firearm offenses.  At trial, the government plans to offer for admission three statements made by him after his arrest.  Those statements include: (1) a conversation between Fabian and his girlfriend, Yemalla Sprauve, that was recorded while the two were sitting in a police vehicle immediately after their arrest; (2) a <u>Miranda</u> waiver and accompanying statement provided by Fabian to law enforcement personnel at the Vermont State Police barracks; and (3) a subsequent statement by Fabian made at the barracks after evidence had been seized from a safe taken from Sprauve's residence.

Currently before the Court is the defendant's motion to suppress all statements, and all evidence derived from such statements, made by Fabian on the date of his arrest.  The defendant has also moved to dismiss Counts

8, 9 and 10 of the indictment, arguing that he was induced by law enforcement into taking possession of a firearm. An evidentiary hearing was held on August 18, 2005. For the reasons set forth below, and having heard and reviewed all of the evidence presented by the parties, I recommend that the motion to suppress and the motion to dismiss be DENIED.

## Factual Background

In March, 2004, the Vermont State Police undertook an investigation into reports of crack cocaine sales by Fabian. On Friday, April 23, 2004, Vermont State Police Sgt. John Merrigan, working undercover, executed a trade with Fabian of automatic weapons for crack cocaine. After Fabian took possession of the weapons, he and companion Yemella Sprauve were arrested. Although Fabian contends that the arrest took place at approximately 11:00 a.m., the hearing testimony showed that the arrest occurred at approximately 2:15 p.m.

After their arrest, Fabian and Sprauve were placed in an unmarked police vehicle for transportation to the Williston State Police barracks. Although the vehicle was unmarked, ATF Agent James Mostyn told Fabian and

Sprauve that it was a police vehicle.  He did not tell them that a digital recording device was in the rear of the vehicle to record anything they said.  Also captured on the recording is Mostyn giving the following notice of rights:

> . . . as far as I was told by these guys, both of you right now are under arrest, so you both have the right to remain silent, you both have the right to not say anything, you don't have to talk to anyone here if you don't want to.  You both have the right to have a lawyer, if you can not afford a lawyer the government will, will, will have one appointed to you ok?

When Fabian arrived at the Williston barracks for processing, ATF Special Agent Joseph Steele advised him of his full <u>Miranda</u> rights using a standard ATF form.  Steele read the form to Fabian and had Fabian read the form himself.  Fabian subsequently signed the form, indicating his understanding of his rights as set forth in the form, as well as the waiver acknowledging that no threats or promises had been made to induce him to speak to law enforcement officials.

Fabian was then interviewed by Mostyn and Vermont State Police Lt. Glenn Hall.  Mostyn recorded Fabian's statement in writing, and asked Fabian to review the statement for accuracy.  If accurate, Mostyn asked Fabian

3

to sign the statement at the end of each paragraph and at the bottom of pages two and three.  In total, Fabian signed the statement eight times in three pages.

Among the information obtained during Fabian's interview was the fact that a safe containing crack cocaine was at Sprauve's residence on Colchester.  Fabian consented to the search of the safe.  The search commenced at approximately 3:00 p.m. on the date of Fabian's arrest.  When the safe in question was recovered, Fabian agreed to assist in opening it, and investigators found, *inter alia*, crack cocaine and ammunition.  After the discovery of this evidence, Mostyn again interviewed Fabian at 6:11 p.m.

Fabian contends in his motion to suppress that he had used cocaine base that morning, and was still under its influence after his arrest.  He also claims that he signed, but did not read, his statement and the waiver form only after police told him that incriminating statements would lead to Sprauve's release.  Fabian further claims that prior to making any statements to police, he requested an attorney but was informed that one would not be provided to him until the following

Monday.  Finally, Fabian notes that no warrant was obtained to search his safe.  Fabian did not testify at the suppression hearing.

In his motion to dismiss, Fabian contends that the police induced him to possess a firearm, and that Counts 8, 9 and 10 of the second superseding indictment should therefore be dismissed on grounds of entrapment.  (Paper 27).  The government does not dispute the facts of Fabian's claims at this time.  Instead, the government argues that entrapment is a matter that may only be determined at trial.

## Discussion

I.  <u>Statements in the Police Cruiser</u>

Fabian claims that the interception of his statements to Sprauve while the two were sitting in the back of a police cruiser violated federal law.  First, Fabian argues that 18 U.S.C. § 2515 bars "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation" from being introduced as evidence at trial.  <u>See</u> 18 U.S.C. § 2510(2) (defining "oral communication").

Case 2:04-cr-00071-wks   Document 43   Filed 08/23/05   Page 6 of 16

At the hearing, Fabian also noted that the <u>Miranda</u> warning provided while he was in the vehicle failed to advise him that his statements could be used against him.

With respect to Fabian's first argument, courts have determined that persons seated in police cruisers do not have an objectively reasonable expectation of privacy. <u>See</u> <u>United States v. Clark</u>, 22 F.3d 799, 801-02 (8th Cir. 1994); <u>United States v. Turner</u>, 209 F.3d 1198, 1200-01 (10th Cir. 2000).  As the <u>Clark</u> court concluded:

> A marked police car is owned and operated by the state for the express purpose of ferreting out crime.  It is essentially the trooper's office, and is frequently used as a temporary jail for housing and transporting arrestees and suspects. The general public has no reason to frequent the back seat of a patrol car, or to believe that it is a sanctuary for private discussions. A police car is not the kind of public place, like a phone booth (e.g., <u>Katz v. United States</u>, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)), where a person should be able to reasonably expect that his conversation will not be monitored.  In other words, allowing police to record statements made by individuals seated inside a patrol car does not intrude upon privacy and freedom to such an extent that it could be regarded as inconsistent with the aims of a free and open society.

22 F.3d at 801-02.

Here, Fabian states that the police car in question was unmarked.  The hearing testimony clearly showed,

6

however, that Fabian was informed on at least two occasions that he was sitting in a police vehicle. Furthermore, "the practical realities of the situation should be apparent to occupants. Patrol cars bristle with electronics, including microphones to a dispatcher, possible video recording with audio pickup, and other electronic and recording devices." Turner, 209 F.3d at 1201. Because Fabian did not have an objectively reasonable expectation of privacy in the police car, the Court should not suppress his statements on this ground.

Fabian also argues that the Miranda warning provided to him while he was in the vehicle was incomplete. Miranda safeguards are "most commonly satisfied by giving the defendant the customary Miranda warnings: That he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that an attorney will be provided for him if he cannot afford to hire one." United States v. Andrews, 22 F.3d 1328, 1337 (5th Cir. 1994); see Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). In California v. Prysock, the Supreme Court stated that Miranda does not require a "precise

formulation of the warnings given a criminal defendant," and "no talismanic incantation [is] required to satisfy its strictures." 453 U.S. 355, 359 (1981). Therefore, the inquiry is simply whether the warning given to the suspect "touched all of the bases required by Miranda." Duckworth v. Eagan, 492 U.S. 195, 203 (1989).

When Fabian was placed in the police car and told his rights, one of Miranda's fundamental bases was missed. As cited above, Mostyn explained to Fabian that he had "the right to remain silent," "the right to have a lawyer," and that "if you can not afford a lawyer the government will, will, will have one appointed to you ok?" Missing from Agent Mostyn's recitation of Miranda rights was the fact that any statements could be used against him. Fabian was not given a full recitation of his Miranda rights until he reached the State Police barracks in Williston.

Despite the incomplete Miranda warning, however, Miranda does not apply if Fabian's statements were volunteered without questioning or other "compelling influences." Miranda, 384 U.S. at 478. As the Court in Miranda noted:

8

> Confessions remain a proper element in law enforcement.  Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.  The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated . . . .  Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

Id.  The Supreme Court has subsequently stated that "[i]t is clear therefore that the special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect is subjected to interrogation."  Rhode Island v. Innis, 446 U.S. 291, 300 (1980).

"Interrogation" can mean more than direct questioning by police.  In Innis, the Supreme Court explained that Miranda can also apply to the "functional equivalent" of interrogation, which the Court defined as including "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  446 U.S. at 301 (footnotes omitted); see also Arizona v. Mauro, 481 U.S. 520, 526-27 (1986).  Such

9

actions could include "psychological ploys, such as to 'posi[t]' 'the guilt of the subject,' to 'minimize the moral seriousness of the offense,' and 'to cast blame on the victim or on society.'" Innis, 446 U.S. at 299 (quoting Miranda, 446 U.S. at 450) (brackets by Innis Court). In contrast, as one commentator has noted, "Miranda has no application where the police or their agents simply eavesdrop on the incarcerated defendant's conversation with others." W. LaFave and J. Israel, 1 Criminal Procedure § 6.7 at 513-14 (1984).

In this case, there is little to suggest that, by placing Fabian and Sprauve in the police car, the police were acting in a way that was "reasonably likely to elicit an incriminating" statement by either arrestee. Innis, 446 U.S. at 301. The testimony at the hearing showed that the police merely placed Fabian and Sprauve in the car, informed them that it was a police car, gave a partial Miranda warning, and hoped that the two would make incriminating statements. Indeed, the actions by the police consisted of nothing more than "those normally attendant to arrest and custody." Innis, 446 U.S. at 301. The lack of a complete Miranda warning is,

therefore, immaterial to whether Fabian's statements may be admitted into evidence.  Id.

In Stanley v. Wainwright, 604 F.2d 379 (5th Cir. 1979), cert. denied, 447 U.S. 925 (1980), the Fifth Circuit reached this same conclusion on similar facts. In that case, three bank robbery suspects were placed in the back seat of a police car.  No Miranda warnings were given.  The police then secretly activated a tape recorder in the front seat.  The district court denied a motion to suppress.  The Fifth Circuit affirmed, stating that Miranda "does not protect spontaneous utterances made by detainees mistakenly believing that they will not be overheard."  Stanley, 604 F.3d at 382.

Because Fabian was not subjected to an "interrogation" at the time of his surreptitiously recorded conversations with Sprauce, Miranda does not apply.  Moreover, Fabian did not have an objectively reasonable expectation of privacy while in the police car.  I therefore recommend that the motion to suppress his statements made in the police car be DENIED.

II.  <u>Voluntariness of Statements</u>

Fabian next argues that his statements "were the result of psychological pressure placed upon him by law enforcement officers.  This pressure . . . included promises of leniency for his girlfriend."  The fact that law enforcement officials explained the potential benefits of cooperating with authorities does not render a defendant's statements involuntary.  <u>See</u> <u>United States v. Jaswal</u>, 47 F.3d 539, 542 (2d Cir. 1995) ("Generally, promises of leniency will not render a confession involuntary.").  Furthermore, Fabian acknowledged in writing that no promises, of leniency for his girlfriend or otherwise, had been made in exchange for his statement.  Accordingly, Fabian's motion to suppress on the ground that his statements were involuntary should be DENIED.

III.  <u>Violation of Criminal Rule 5 and 18 U.S.C. § 3501</u>

Fabian further argues that statements made in his second interview at the Vermont State Police barracks should be suppressed on the ground that they were made more than six hours after his arrest.  The government does not contest Fabian's argument that a statement made

12

more than six hours after arrest would violated Fed. R. Crim. P. 5 and 18 U.S.C. § 3501(c).  Instead, the government has presented evidence showing that Fabian's arrest was not as early as he claims.

Fabian asserts that he was arrested at approximately 11:00 a.m. on the afternoon of April 23, 2004.  The evidence presented by the government, however, showed that Fabian was arrested at approximately 2:15 p.m. Fabian's second statement at the Vermont State Police barracks was given at 6:11 p.m., less than six hours after his arrest.  Accordingly, the Court should DENY the motion to suppress on this ground.

IV.  <u>Assertion of Right to Counsel</u>

Fabian's final claim in support of suppression is that he "requested counsel prior to answering any questions and, as a result of that, the officers had to either provide him with counsel, or cease all questioning."  There is no record evidence to support this claim.  The government began recording Fabian shortly after his arrest, and continued recording through to his arrival at the State Police barracks.  During this time, Fabian made no request for counsel.  Once he

arrived at the barracks, Fabian was presented with his <u>Miranda</u> rights and signed a waiver.  Consequently, the facts show that Fabian did not exercise his right to counsel, and that his questioning without counsel present was permissible.

V.   <u>Motion to Dismiss</u>

Fabian has moved to dismiss Count 8, possession of a firearm as a previously convicted felon (18 U.S.C. § 922(g)(1)), Count 9, receipt of a firearm by a person under felony indictment (18 U.S.C. § 922(n)), and Count 10, possession of a firearm during a drug trafficking crime (18 U.S.C. § 924(c))).  (Paper 27).  In support of his motion, Fabian contends that "[p]rior to April 21, 2004, [he] had not used a firearm in relationship to a drug offense and had never initiated any conversation with a cooperating individual about the desire to use and or possess a firearm."  He therefore claims upon "information and belief" that by setting up a trade of drugs for firearms, police induced him "to take possession of a firearm, when he was not predisposed to do so."

The government's sole argument in opposition is that

Fabian's motion is premature, and that entrapment is an issue that must wait until trial. The government also contends that it has "abundant evidence" of predisposition, including the ammunition found in Fabian's safe and Fabian's eagerness to acquire weapons.

The Supreme Court has held that "[t]he question of entrapment is generally one for the jury, rather than for the court." Mathews v. United States, 485 U.S. 58, 63 (1988). Indeed, because "the general issue to be tried is the government's inducement and the fact-intensive element of predisposition," entrapment should not be addressed in a motion to dismiss. United States v. Labate, 2001 WL 533714, at *9 (S.D.N.Y. May 18, 2001); see also United States v. Freed, 401 U.S. 601, 607 (1971). Given the parties' apparent factual disputes with respect to Fabian's predisposition, this general rule applies here. Therefore, I recommend that the motion to dismiss (Paper 27) be DENIED.

## Conclusion

For the reasons set forth above, I recommend that Fabian's motion to suppress (Paper 20) and motion to dismiss (Paper 27) be DENIED.

Dated at Burlington, in the District of Vermont, this 23rd day of August, 2005.


                                  /s/ Jerome J. Niedermeier
                                  Jerome J. Niedermeier
                                  United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See</u> Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).